**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Novak-Scott, ) | No. CV 05-3147-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| City of Phoenix, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff claims that Defendant retaliated against her in violation of Title VII of the Civil Rights Act of 1964. To prevail on this retaliation claim, Plaintiff must establish, among other things, that she suffered an adverse-employment action. Defendant argues that Plaintiff has failed to present sufficient evidence of such an action, and now moves for summary judgment on this basis. The Court will grant Defendant's motion.

**I.   Background**

Plaintiff Debra Novak-Scott was employed by Defendant City of Phoenix (the "City") at all times relevant to her retaliation claim. During this same time, she was also on "union release," which means that she worked for and at her union's office while the City continued to pay her salary and other benefits.

In December 2004, Novak-Scott filed a sexual-harassment complaint with the City's Equal Opportunity Department ("EOD") against one of her union coworkers, a City

1  employee who was also on union release.  The City began its formal investigation of Novak-
2  Scott's complaint in January 2005.

3      On April 21, 2005, while the investigation was ongoing, Novak-Scott filed a charge
4  of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging
5  that the City had unlawfully retaliated against her by taking too long to complete its
6  investigation of her sexual-harassment complaint.  After the City completed its investigation
7  on June 9, 2005, within its self-imposed deadline of 180 days, Novak-Scott filed a second
8  EEOC charge against the City.  In that charge, Novak-Scott alleged that the manner in which
9  the City had investigated her sexual-harassment complaint was inappropriate and in
10 retaliation for filing her first EEOC charge.  Specifically, Novak-Scott claimed that the City
11 had retaliated against her by failing to maintain the confidentiality of the investigation, by
12 sending her a questionnaire that asked certain sensitive questions for the sole purpose of
13 humiliating her, and by allowing the EOD investigator who was assigned to her internal
14 complaint to respond to the external EEOC charge.

15     After receiving EEOC right-to-sue letters for both charges, Novak-Scott timely filed
16 this suit on October 10, 2005, seeking emotional-distress damages allegedly caused by the
17 City's actions.

18 **II.   Legal Standard**

19     The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
20 Civil Procedure.  Under this rule, summary judgment is appropriate when "the pleadings, the
21 discovery and disclosure materials on file, and any affidavits show that there is no genuine
22 issue as to any material fact and that the movant is entitled to judgment as a matter of law."
23 Fed. R. Civ. P. 56(c).  Summary judgment is mandated "against a party who fails to make
24 a showing sufficient to establish the existence of an element essential to that party's case, and
25 on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.
26 317, 322 (1986).

27     Initially the movant bears the burden of pointing out to the Court the basis for the
28 motion and the elements of the causes of action upon which the nonmovant will be unable

to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmovant to establish the existence of a material fact. *Id.* The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. The Court construes all disputed facts in the light most favorable to the nonmoving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**III.    Discussion**

Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To prevail on a Title VII retaliation claim, a plaintiff must establish (1) that he engaged in an activity protected under federal law, (2) that he was subjected to an adverse-employment action, and (3) that there was a causal connection between the plaintiff's activity and the employment action. *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

Regarding the second prong of the prima-facie case, the Supreme Court has emphasized that "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Rather than protect individuals from all retaliatory actions, Title VII protects individuals only from those retaliatory actions that produce "significant" harm. *Id.* Accordingly, a challenged action is an adverse-employment action only if a "reasonable person in the plaintiff's position" would

1  consider the action to be "materially adverse," which means that the action might have
2  deterred "'a reasonable worker from making or supporting a charge of discrimination.'" *Id.*
3  at 2415-16 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

4  For purposes of its summary-judgment motion, the City concedes that Novak-Scott
5  engaged in a protected activity and that there was a causal connection between that activity
6  and the alleged adverse-employment actions. The City, however, contends that Novak-Scott
7  has failed to produce evidence from which a reasonable jury could find that she suffered an
8  adverse-employment action.[1] In response, Novak-Scott argues that both the length of the
9  City's internal investigation of her sexual-harassment complaint and the manner in which it
10 was conducted were adverse-employment actions. But as the Court explains below, a
11 reasonable employee in Novak-Scott's position, on the record before this Court, would not
12 consider either of these challenged actions to be materially adverse.[2]

13 First, with regard to the length of the investigation, Novak-Scott admits that the City
14 completed its investigation of her discrimination charge within its self-imposed deadline of
15 180 days. [*Compare* Pl.'s Controverting Statement of Facts ("CSOF") ¶ 103 *with* Def.'s
16 Statement of Facts ("SOF") ¶ 103.] In such circumstances, the length of the investigation
17 cannot be retaliatory unless the plaintiff can show disparate treatment. *Brooks v. City of San*
18 *Mateo*, 229 F.3d 917, 929 (9th Cir. 2000). Novak-Scott alleges that, "in her experience," the

---

[1] The City alternatively contends that, even if Novak-Scott has met the burden of proving her prima-facie case, she has failed to produce any evidence of pretext to rebut the City's legitimate, nondiscriminatory reasons for its actions. Because the Court concludes that Novak-Scott has failed to establish an adverse-employment action, the Court does not reach this alternative argument.

[2] The Court notes that, as an initial matter, the City argues for a rule of law that would shield employers from Title VII retaliation liability for actions taken by employers during an internal investigation of a discrimination complaint. Such a formalistic position, however, squarely conflicts with *White*'s case-by-case, "context matters" approach to determining whether a particular action is materially adverse. *See* 126 S. Ct. at 2415 ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."). This Court therefore declines to adopt such a rule and will proceed to the substance of Novak-Scott's allegations.

1 City "usually takes less time" to complete such investigations and that it "exceeded the
2 normal period of time in her case without justification." [Pl.'s CSOF ¶ 103.] However, other
3 than her own bare allegations, Novak-Scott has not produced any evidence of the "normal
4 period of time" it takes the City to complete sexual-harassment investigations. Such
5 evidence is not enough to create a genuine issue of fact as to whether the City treated Novak-
6 Scott differently than other employees in the amount of time it took to investigate her
7 complaint. *See Anderson*, 477 U.S. at 247-48 (holding that a nonmovant's bare assertions,
8 standing alone, are insufficient to create a material issue of fact and defeat a motion for
9 summary judgment); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (refusing
10 to find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving"
11 testimony).

12 Moreover, the undisputed evidence in this case contradicts Novak-Scott's allegation
13 that there was no justification for the length of the investigation. Novak-Scott admits that
14 the City's investigator explained to her during their initial conversation that she was "quite
15 busy." [Def.'s SOF ¶ 55.] And because a busy investigator would prioritize her cases, one
16 would expect a case like Novak-Scott's — where the alleged harasser no longer works with
17 the victim and there is no ongoing threat of harassment — to give way to more time-critical
18 matters. In light of these undisputed facts, any harm caused by the length of the City's
19 investigation was trivial at best and therefore not an adverse-employment action. *See White*,
20 126 S. Ct. at 2415 (distinguishing between "significant" and "trivial" harm as a matter of
21 law).

22 Likewise, each of Novak-Scott's complaints with regard to the manner of the City's
23 investigation is the kind of trivial harm that all employees are expected to endure. To begin
24 with, Novak-Scott alleges that the City failed to take necessary action to maintain the
25 confidentiality of the investigation. It is undisputed, however, that the City asked all
26 witnesses and parties involved to keep the matter confidential. [*Compare* Pl.'s CSOF ¶ 166
27 *with* Def.'s SOF ¶ 166.] Novak-Scott does not specify what other action she thinks the City
28

should have taken, nor does she point to any specific wrongdoing on the part of the City.[3] Instead, Novak-Scott seems to suggest that the mere fact that some coworkers learned about the investigation means that the City retaliated against her. The City, however, cannot prevent gossip, and on this record, Novak-Scott has not shown that her allegations are anything more than that. *See White*, 126 S. Ct. at 2415 (stating that "snubbing by supervisors and co-workers" is not an adverse-employment action); *Brooks*, 229 F.3d at 929 (holding that "ostracism suffered at the hands of coworkers cannot constitute an adverse employment action").

Novak-Scott next alleges that the subject matter of a questionnaire that the EOD investigator sent to her was totally inappropriate and had no other purpose but to humiliate her. The undisputed evidence in this case, however, contradicts this allegation. Novak-Scott's alleged harasser made specific counter-allegations against Novak-Scott that indicated that she may have welcomed his behavior.[4] These counter-allegations were corroborated,

---

[3] The only arguable instances of specific wrongdoing Novak-Scott points to are the undisputed facts that a memorandum about the investigation was sent to the wrong personnel officer and that a confidential questionnaire was sent to Novak-Scott's union address (instead of her home address) without stamping "Personal" or "Confidential" on the envelope. First, regarding the memorandum, even accepting Novak-Scott's version of the facts as true — that this was an intentional disclosure of confidential information — the only harm Novak-Scott alleges in connection with such disclosure is the embarrassment of one more coworker knowing about the existence of the ongoing investigation. She does not allege that this particular coworker's knowledge of the investigation would be any more harmful to her than that of any other. Under such circumstances, any embarrassment Novak-Scott experienced was trivial harm that would not dissuade a reasonable worker in her position from filing a charge of discrimination.

Second, regarding the questionnaire, Novak-Scott does not allege that she told the investigator not to send any correspondence to her union address. Nor does she allege that she told the investigator to send all correspondence to her home address. The only harm Novak-Scott alleges in connection with this event is the embarrassment she allegedly suffered when a union coworker opened the envelope addressed to her and viewed its contents. Put simply, the City cannot be held responsible for the actions of Novak-Scott's union colleagues.

[4] Novak-Scott moves to strike all paragraphs from the City's Statement of Facts that concern the alleged harasser's counter-allegations of welcomeness, contending that these

- 6 -

1  at least in part, by the testimony of several witnesses, including that of Novak-Scott's own
2  union supervisor who characterized her relationship with the alleged harasser as flirtatious.
3  [Def.'s SOF Ex. J at 2.] Under these circumstances, the EOD investigator was fully justified
4  in broaching the sensitive topics implicated by the counter-allegations. A fair and impartial
5  investigation of Novak-Scott's charge of sexual harassment would demand no less.

6  Finally, because it violated the City's policies and guidelines to do so, Novak-Scott
7  argues that it was an adverse-employment action to permit the same EOD investigator who
8  was handling her internal charge of discrimination to also draft the position statement in
9  response to her external charge with the EEOC.[5] Novak-Scott, however, does not present
10 any evidence that calls into question the *manner* in which the EOD investigator responded
11 to the EEOC charge. In other words, Novak-Scott does not claim that the alleged violation
12 of internal policy harmed her in any way, much less in a "significant" way. *See White*, 126
13 S. Ct. at 2415. Thus, on this record, a reasonable jury could not find that the City's alleged
14 violation of internal policy was an adverse-employment action.

15 "An employee's decision to report discriminatory behavior cannot immunize that
16 employee from those petty slights or minor annoyances that often take place at work and that
17 all employees experience." *Id.* Novak-Scott was not terminated; she did not receive a
18 negative employment reference or a negative performance review; and she was not denied
19 promotion. *Cf. Brooks*, 229 F.3d at 928. Novak-Scott was not given a more burdensome
20 work schedule, denied secretarial support, or excluded from meetings or seminars that could

---

allegations are irrelevant to this motion. [Doc. # 77.] This contention is meritless, as these allegations form part of the undisputed context in which the propriety of the EOD investigator's questions must be viewed.

Alternatively, on the basis of her bare allegations alone, Novak-Scott attempts to deny that the harasser made these counter-allegations. [Pl.'s SOF ¶ 109.] As already noted, such a denial cannot create a genuine issue of fact sufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

[5] The City denies that a violation of internal policy occurred and moves to strike Novak-Scott's allegations on this topic as unsupported by the evidence. For purposes of this motion, however, the Court will simply assume that such a violation occurred.

- 7 -

1. have made her eligible for certain benefits. *Cf. Strother v. So. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996). The City did not completely fail to address her discrimination complaint. *Cf. Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 787 (8th Cir. 2007). Nor did it terminate the investigation when Novak-Scott filed her charge of discrimination with the EEOC. *Cf. EEOC v. Bd. of Governors of State Colleges & Univs.*, 957 F.2d 424, 429-30 (7th Cir. 1992). In short, Novak-Scott has not cited, and this Court has not found, a single case, from this circuit or elsewhere, in which a court has found an adverse-employment action under circumstances similar to those in this case. On the record before this Court, Novak-Scott's experiences amount to nothing more than the kind of minor inconveniences that one might expect to endure in the context of a sexual-harassment investigation.

**IV.   Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 70) is **GRANTED**. The Clerk of the Court shall enter judgment accordingly;

**IT IS FURTHER ORDERED** that, to the extent the Court relies on evidence that Plaintiff claims is inadmissible, Plaintiff's Motion to Strike (Doc. # 77) is **DENIED** on its merits. In all other respects, the motion is **DENIED** as moot;

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. # 79), which was mistakenly filed as an "Objection," is **DENIED** as moot.

DATED this 14th day of April, 2008.

James A. Teilborg
United States District Judge